### IN

# THE SUPREME COURT

#### OF

## THE STATE OF MISSOURI,

MARCH TERM, 1857, AT ST. LOUIS.[*]

---

BOMPART *et al.*, Plaintiffs in Error, v. RODERMAN *et al.*, Defendants in Error.[†]

1. The act to provide for the partition of land, &c., (R. C. 1845, p. 764,) did not authorize the joinder of all the parties in interest as parties to the petition; there must be a party defendant as well as a party plaintiff, otherwise the proceeding will not be a suit for partition within said act, and being unauthorized will be null and void as a judicial proceeding.
2. Such a proceeding being unauthorized as a judicial proceeding, a partition made therein would not be rendered binding upon a married woman—one of the applicants for partition—by reason of the execution by her of an instrument in writing recommending the report of the commissioners to the approval of the court.
3. Although a partition so effected be followed up by possession in severalty of the allotments, a party to such proceeding will not thereby be estopped

---

[*] LEONARD, Judge, by reason of indisposition, was necessarily absent during the greater part of this term, and consequently sat at the hearing of but few cases.—[REP.

[†] The importance of this case, as affecting titles to real estate, has induced the REPORTER to make a full and elaborate report thereof.

to go behind the partition and deny that other of said parties had title to the premises so partitioned.

4. Nor would such an estoppel be created by the fact that one of the parties to whom an allotment had been made conveyed the premises, so allotted, to a third person, describing them as the same allotted to the grantor in said partition proceeding.

### *Appeal from St. Louis Land Court.*

This was a suit for partition instituted by Louis B. Bompart and Louis F. Bompart—sons of Louis and Francois Bompart—against Aurore, widow of said Louis Bompart, Emelie, widow of said Francois Bompart, the children and grand-children of said Louis and Francois, also against Marie Madeleine Delorier, Charles Roderman and Celeste Roderman, his wife. Plaintiffs state in their petition " that Baptiste Bompart died seized and entitled of the following pieces or parcels of ground, situate in the said county of St. Louis, and more particularly described, as follows : First, a piece of ground, in block 37 of the city of St. Louis, containing twelve feet, be the same more or less, and running eastwardly one hundred and fifty feet, be the same more or less, and being lot numbered three, as assigned by commissioners in partition among heirs of Henry Delorier, bounded, &c. ; second, a lot or tract of ground, in said county of St. Louis, containing twenty arpens, being lot designated A., as assigned by commissioners in said partition among heirs of Henry Delorier to said Baptiste Bompart, being four arpens wide, &c. ; that said Baptiste Bompart died intestate and without issue ; that his sole heirs were his brothers Louis Bompart and Francois Bompart, and his uterine sisters Marie Delorier and Celeste, wife of Charles Roderman ; that said Marie and Celeste are the children of Henry Melard, alias Delorier, and Celeste Duchouquette ; that said Celeste Duchouquette is mother of said Baptiste Bompart, having subsequent to the death of his father, Lafleur Bompart, intermarried with said Delorier ; that said Louis, brother of Baptiste Bompart, has also died intestate, leaving as his sole legal representatives Aurore, his widow, [a party defendant to this suit,] and Louis

B. Bompart [plaintiff], Catherine Therese Bompart, Henry Bompart, Joseph Bompart and Melinda Bompart [who are made defendants to this suit], his children ; that said Francois Bompart, brother of Baptiste, is also dead, leaving as his sole heirs and legal representatives, Emilie, his wife," and others, his children and grand-children (among whom was Louis F. Bompart, plaintiff), "but devising by will, duly probated, the usufruct of his estate to Emilie, his wife, remainder to his children, &c. Plaintiffs therefore pray that the court determine the rights of the respective parties, give judgment of partition, and for such other and further relief," &c.

Aurore Bompart, widow of Louis Bompart, as also Emelie, widow of Francois, answered, admitting the allegations of the petition. Answers were also filed in behalf of the minor defendants, the children and grand children of said Louis and Francois.*

Charles Roderman and Celeste, his wife, and Marie M. Delorier, by their answer, admitted that Baptiste Bompart died seized of the first lot described in the petition, to-wit, that in block 37 ; but denied that he died seized, or was ever seized of the lot of twenty arpens secondly described. They alleged that Henry Delorier died seized of said last mentioned tract; that the same descended at his death to his only surviving children and heirs, the said Celeste Roderman and Marie Madeleine Delorier.

In support of their title as alleged, plaintiffs offered in evidence the following record :

"State of Missouri, county of St. Louis, ss. Be it remembered that heretofore, viz., on the 9th day of February, 1846, there was filed in the Circuit Court of the county aforesaid a petition, which is in the words and figures following, viz :

"'To the honorable John M. Krum, judge of the Circuit Court of St. Louis county, sitting in chancery. Your petitioners,.

---

* Several of these minor defendants appeared by their guardian, Louis F. Bompart, one of the plaintiffs. It is also to be noted that A. J. P. Garesche, one of the plaintiffs' counsel, also acted as counsel for said guardian in appearing in behalf of his wards.

whose names are as follows, by their solicitor, beg leave to represent that the heirs at law of Henry Melard, alias Delorier, deceased, whose names are Emilie Bompart, wife of Francis Bompart, deceased, Louis Bompart, Baptiste Bompart, Mary Delorier, and Celeste Roderman, wife of Charles Roderman, formerly Celeste Delorier, did inherit as heirs at law certain real estate, lands and tenements, negroes, slaves, personal property, and choses in action, which said personal and real estate is described as follows, to-wit: one certain piece and parcel of ground situate on the river Des Peres, in the county of St. Louis, and state of Missouri, to-wit: one hundred arpens of land, being in the east part of survey 1930, being part of a concession by the Spanish government of Upper Louisiana to Therese Barois and Frances Brazeau, two widows; and a certain lot situate on the east side of Second street, adjoining the Green Tree tavern, and south of the same, being sixty feet front, more or less, and about —— feet deep, this in the city and county of St. Louis, and state of Missouri; also one negro man named Bob, one negro woman named Narcisse, and her two children, girls—the eldest named Julia, about two years old, the other named Maria, about five or six months old; one other mulatto girl, called Sophia, about sixteen or seventeen years old. Now therefore your petitioners, by their solicitor, pray your honor to appoint commissioners to make partition between the aforementioned devisees and heirs aforesaid, being adults and of lawful age, and mutually consenting to and applying and praying for equitable partition of all the property aforesaid, they being the only heirs and devisees of Henry Melard, alias Delorier, deceased; and your petitioners do further pray your honor to do in the premises all which may be equitable and just in partition of the property, real and personal, which the said several devisees, by mutual agreement and assent, signified by these presents, may or can be done in regard to their rights and interests jointly and severally, and that partition may be made in conformity with equity, and your petitioners will ever pray, &c. For the petitioners, Alphonso Wetmore, solicitor.'

" At the November term, 1845, of our St. Louis Circuit Court, on Tuesday, February 10th, 1846, the following proceedings were had herein, viz :

" Now at this day come the said petitioners by their attorney, and file their petition herein, praying for the partition [of the] lands and premises therein described, and also of certain personal property referred to, whereupon all and singular the premises are submitted to the court, which being seen, heard, and fully understood, and it appearing to the court from said petition that the said petitioners are the heirs at law of Henry Melard, alias Delorier, deceased, and as such inherited from him the following personal and real estate, to-wit : one certain piece and parcel of land, lying and being in the county of St. Louis, and state of Missouri, to-wit : one certain piece and parcel of land, situate on the river Des Peres, in the county of St. Louis, and state of Missouri, to-wit : one hundred arpens of land, being in the east part of survey 1930, being part of a concession by the Spanish government of Upper Louisiana to Therese Barois and Frances Brazeau, two widows ; and a certain lot situate on the east side of second street, adjoining the Green Tree tavern, and south of the same, being sixty feet front more or less, and about —— feet deep, this in the city and county of St. Louis, and state of Missouri ; and also the following described personal property, to-wit, one negro man named Bob, one negro woman named Narcisse and her two children, girls—the eldest is named Julia, about two years old, the other named Maria, about five or six months old ; one other mulatto girl, called Sophia, about sixteen or seventeen years old ; the court doth therefore order that partition of said real estate and personalty be made between said petitioners according to their respective rights and interests, and Theodore Papin, Samuel Mount and Henry Taylor, three respectable freeholders, residents of the county of St. Louis, where the property to be divided is situate, are hereby appointed commissioners to make such partition, and they are ordered to make report of their proceedings under this order to this court without delay.

" Afterwards, on the 12th day of February, 1846, the following report of commissioners was filed herein, viz :

" ' We therefore, Theodore Papin, Samuel Mount and Henry Taylor, commissioners appointed by the honorable John M. Krum, judge of the Circuit Court of St. Louis county, in the state of Missouri, in chancery, to make partition between the heirs and devisees of Henry Melard, alias Delorier, deceased, of the real estate, negroes and personal property by him devised, to-wit, unto Emelie Bompart, widow of Francois Bompart, deceased, Louis Bompart, Celeste, wife of Charles Roderman, formerly Celeste Delorier, Baptiste Bompart and Marie Delorier, do now make their report of the property devised as aforementioned, and in conformity with the plat of the survey and the schedule hereto annexed, which form part and parcel of this report, that they award to Baptiste Bompart the part of the one hundred arpens of the river Des Peres tract, which is marked with the letter A, containing twenty arpens, and that they also award in partition [here follow allotments of twenty arpens of said tract " to Charles Roderman, in right of wife," of twenty arpens to Marie Delorier, of twenty arpens to heirs of Francois Bompart, deceased, of twenty arpens to Louis Bompart. The commissioners also made a similar partition of the lot of sixty feet front in the city of St. Louis, allotting twelve feet front thereof ' to Charles Roderman,' and the same quantity to Louis Bompart, also to Baptiste Bompart, to Marie Delorier, ' to Francois Bompart's heirs.'] The commissioners also value as the joint property of the petitioners, the heirs inheriting the above estate, and value the negro slaves of the estate as follows : one negro man, named Bob, at $200 ; one negro woman, named Narcisse, with her two children, at $550 ; one mulatto woman, at $400 ; the whole value of said slaves being $1150. The commissioners further report that there is of the estate aforesaid in personal property, choses, as follows : notes of the value of $271 65, and plate (silver) of the value of $52. The commissioners, therefore, report that the heirs of the estate aforesaid have agreed by their signatures respec-

tively hereto annexed, that they will be content with a judg-
ment and decree of his honor, John M. Krum, that they be
allowed to partition among themselves the negroes and other
personal estate according to the valuation fixed upon all and
singular the different parts and parcels thereof, according to the
inventory hereto annexed. [Signed] Theodore Papin, Henry
Taylor, Samuel Mount.'

" ' We, the heirs of the estate of Henry Melard, alias Delo-
rier, deceased, to-wit: Emelie Bompart, widow of Francois
Bompart, deceased, Louis Bompart, Celeste, wife of Charles
Roderman, formerly Celeste Delorier, Baptiste Bompart, and
Mary Delorier, hereby agree and pray the honorable John M.
Krum, judge of the Circuit Court of St. Louis county, sitting
in chancery, to allow and decree and adjudge that they the sev-
eral heirs of the above named Henry Melard, alias Delorier,
deceased, pray that under the appraisement of the commission-
ers your honor made, may be allowed to make partition of the
personal property and negroes according to the following inven-
tory : one negro man, named Bob, aged 58 years, valued at
$200 ; one negro woman, named Narcisse, with her two chil-
dren, she aged 34 years, one child aged two years, the other
six months, valued at $550 ; a lot of old silver ware valued at
$52 ; one mulatto girl, named Sophia, aged seventeen years,
valued at $400 ; two notes of $271 66 ; total, $1473 66.
The equal shares of the several heirs being $294 73 each ; now
the division proposed is in form following : Charles Roderman
has become the purchaser of the negro woman named Narcisse
and her two children, for the sum of $550 ; and Baptiste Bom-
part has become purchaser of the yellow girl named Sophia for
the sum of $400 ; and Louis Bompart having become the pur-
chaser of the negro man Bob for the sum of $200 ; and the
widow of Francois Bompart has become the purchaser of the
lot of silver ware named in the inventory, and the notes therein
named, the notes and the silver ware together amounting to the
value of $326 66 ; now therefore the share of each of the
above named heirs and their interest therein severally being

$294 73, each of the said heirs, who received more than their shares of the property aforesaid upon the valuation and partition thereof, have paid over to the other heirs the excess over and above their several shares of the value of the negroes and the personal property above described; now we, the undersigned, being satisfied with the appraisement of the commissioners and their partition, and the mutual purchasers of the several parts and parcels of the negroes and the personal property, pray that we, being the sole heirs of the said estate, may have judgment and decree affirming all and singular the acts and doings of the commissioners and ourselves in the premises; and your petitioners will ever pray. [Signed] Louis Bompart, Emelie Bompart, Baptiste Bompart, Marie Delorier, Charles Roderman, Celeste Roderman.'

" Afterwards at the November term, 1846, of our said court, on Friday, December 11th, 1846, the following further proceedings were had herein, viz:

" Now at this day come the petitioners by their attorney, and on his motion it is ordered that the report of the commissioners, filed in this cause, be confirmed as valid and effectual forever.

" State of Missouri, county of St. Louis, ss. I, William J. Hammond, clerk of the Circuit Court within and for the county aforesaid, certify the foregoing to be a true transcript of the record and proceedings in the case of Emelie Bompart et al., in partition, as the same remains in my office. In testimony whereof, I," &c.

Defendants Roderman and wife and Marie Madeleine Delorier objected to the introduction of this record on the ground that the proceedings were void, there being no judgment in partition. This objection was sustained. The plaintiffs then offered the record as evidence of the admissions and declarations of the parties to it. It was ruled out, on objection, as incompetent to prove any admissions or declarations of said Roderman and wife and Marie Madeleine Delorier. Plaintiffs then proved that Baptiste Bompart died possessed of the twenty

arpens in controversy ; that he had been in possession of it for nearly ten years ; that the various parties named in the report of the commissioner above set forth took possession of the several parcels allotted to them, and occupied them, each as his own, claiming title in the severalty ; that prior to the time of the parties entering into the exclusive possession of the several parcels allotted to them, Delorier's estate was in posses- sion of the whole. It also appeared that Celeste, wife of Charles Roderman, and Marie Madeleine Delorier, were the sole heirs of Henry Delorier.

Plaintiffs then offered in evidence a deed of trust, dated De- cember 9th, 1853, executed by Charles Roderman and Celeste, his wife, by which they conveyed to Charles G. Weber and Charles Balmer, in trust, certain premises described in said deed, as follows : " that certain tract or parcel of land containing twenty arpens, situate in said county of St. Louis, part of sur- vey No. 1930, bounded on the north by a tract of twenty ar- pens, now or formerly belonging to the heirs of Francis Bom- part ; on the east, by a part of said survey 1930, now or for- merly owned by Louis Bompart ; on the south by a tract of twenty arpens, now or formerly belonging to Baptiste Bompart [the tract in controversy in the present suit], and on the west by land now or lately owned by John C. Marshall ; the tract of land hereby conveyed being the same which was allotted by commissioners in partition to said Charles Roderman, in right of his wife Celeste Roderman, as lot B, according to the report of said commissioners, and the plat of survey accompanying the same, made by them among the heirs of Henry Delorier, which report and plat were approved by the Circuit Court of said St. Louis county, on the 12th day of February, 1846, a copy of which report and plat, and the approva land confirma - tion thereof by said court, duly certified, is herewith filed for record." Plaintiffs also introduced the original record book from the office of the recorder, to show that the record of par- tition alluded to in the deed—the same as that ruled out by the court as already above set forth—was filed for record in the

recorder's office, on the same day said deed of trust was filed for record. The court ruled out said deed of trust and said record as incompetent.

Plaintiffs then introduced Charles Roderman, defendant, as a witness, who testified " that he (witness) knew the parties to this suit; that himself and his wife Celeste Roderman were parties to this suit; that said Celeste and Marie Madeleine were sole children of Henry Delorier; that Baptiste Bompart had been in possession of the tract of twenty arpens sought to be partitioned, and had occupied it ever since the alleged partition spoken of; that each of the parties had taken exclusive possession of their several parcels about ten years ago, about the time and after the alleged partition; that he (witness) did not know of any attempt to disturb the parties in their possession; that he (witness) was now in possession of the tract of twenty arpens claimed by Baptiste Bompart's estate, having rented it of the administrator of said Baptiste; that he (witness) had since purchased the tract of twenty arpens so taken by Marie Madeleine Delorier, so that he (witness) now had a tract of forty arpens instead of twenty arpens—that is, twenty arpens in his own right, and twenty in right of his wife, Celeste Roderman."

The court instructed the jury that " upon the case made in testimony before the jury, the plaintiffs are not entitled to a verdict upon the issues." Plaintiffs thereupon took a non-suit, with leave to set the same aside. Exceptions were duly taken.

*A. J. P.* and *P. B. Garesché*, for plaintiffs in error.

I. The proceedings of the original partition are legal. The Land Court declared them void upon the hypothesis that in the first judgment that partition should be made, the court failed to decree what were the respective rights of parties. But this is but the interlocutory decree, not the final decree, and therefore no appeal could be taken from it. (Gudgell v. Mead, 8 Mo. 53; McMurtry v. Glasscock, 20 Mo. 432; Hite, v. Thompson, 18 Mo. 465.) There was a final judgment of partition entered in the very words of the statute upon the filing of the

report of the commissioners.    (See R. C. 1845, p. 770, Partition Act, § 26.)

II. Roderman and wife are estopped by the recitals of their deed.    (Lajoye v. Primm, 3 Mo. 368; Dickson v. Anderson & Thompson, 9 Mo. 156; Taylor v. Ulrici, 19 Mo. 89.)    The lot in block 37 and the twenty arpens having both been assigned by the same partition to Baptiste Bompart, as alleged in the petition, and Roderman and wife, and Marie Madeleine Delorier, by their silence, admitting the legality of the proceedings to give them title to block 37, will be estopped to deny it as to the 20 arpent lot.    (Taylor & Mason v. Zepp, 14 Mo. 482; Blair v. Smith, 16 Mo. 273.)

III. But even if proceedings were void, and parties are not estopped, under the testimony of the witnesses, it was a fair question to be left to the jury whether they had not assented to it.    (Brown v. Wood, 17 Mass. 68; 11 Pick. 311; 13 Penn. 376.)

IV. It is not true that Charles Roderman was not a party to the proceedings for partition.

V. The heirs of Francis Bompart were parties in the person of his widow Emelie.    Besides, these heirs are content with the partition.

VI. Though it should be held that the partition was void as a record partition, it is good as a parol one.    Roderman testifies that he has purchased the twenty arpens allotted to Marie Madeleine Delorier; also that he is now in the possession of the twenty arpens allotted to Baptiste Bompart, having leased it of Louis B. Bompart, (one of the plaintiffs,) administrator of Baptiste Bompart.    He is estopped to deny the title of said Baptiste.    He is also estopped to deny the partition.    The question is not whether the parties are estopped to deny the title, but whether, affirming the validity of a partition as to one piece of property, they can impeach it as to another, both being made by the same judgment.    Let us suppose that the children of Mrs. Delorier, by a former husband, made with their step-father, said Delorier, an agreement that the children he

should have by their mother should be equal heirs with them in their father's estate, and they with them in his said Delorier's estate ; that these heirs of the first bed had a lot on Main street, and those of the second a tract of land in the country ; that one suit of partition is instituted for both these pieces of property, the children of the first and second marriages sharing alike and equally both pieces of property ; that afterwards one of the heirs of the first marriage dies, and partition is sought, and the heirs of the second bed, as is now done by Roderman, admit the validity of the partition as regards the lot in the city, to which they had no other claim than by the partition suit, but disavow it as to the tract in the country. These are the facts in the present instance, and if not elicited, it was because the court below excluded every thing, and decided the case.

*S. Reber*, for defendants in error.

I. The proceedings for partition in the Circuit Court were irregular and void for several reasons. *First*, there was no ascertainment of the interests of the parties in the property sought to be divided, either by a direct finding of the court, or inferentially by a statement of those interests in the petition, and an award of partition accordingly. It is of the very essence of a judgment of partition that the interest of the parties should be ascertained ; for how otherwise can the commissioners make the division ? They have no authority to adjudicate on the respective rights of the parties. It is no answer to say that no appeal lies from an interlocutory judgment. A judgment may be reversed for error in the interlocutory decree, and a void interlocutory decree will render the whole proceeding void. *Second*, the proceeding is void because the commissioners allot slaves to Charles Roderman and to the heirs of Francis Bompart, when they are not parties to the record at all, and give nothing to Emelie Bompart, who was found by the judgment of the court to be one of the heirs of Henry Delorier, whose estate was to be divided. *Third*, the commissioners were not sworn, nor was their report proved or acknowledged. The judgment of confirmation did not cure these errors. Nor

Bompart v. Roderman.

did the paper signed by the parties cure the irregularities; 1st, because that paper only relates to the personal property; and 2d, if it had in express terms confirmed the prior proceedings, it could not in law have any such effect, for they were void. I waive the fact that the execution of the paper was not proved.

II. The proceedings being void as a record partition, were they in connection with the subsequent occupancy by the parties in severalty good as a parol partition? The title to land can only pass by writing executed in form of law. There are two exceptions to this rule, which both rest, if properly understood, upon the same equitable ground. The one is the case of a parol sale of land which has been executed by the vendee; and the other, where there has been a parol partition of land in pursuance of which the parties have occupied and improved, and on the faith of which they have expended their labor and money, so that it would be inequitable not to hold the parties concluded by it. In both these cases, the parties are estopped to deny the fact on the existence of which the opposite parties have acted. To make a valid parol partition of land, the parties to it must all have title; the division must be fair and equal in value if all the owners are not *sui juris*; there must be occupancy in conformity with it; there must be acquiescence; and there must be expenditure of money or labor by some of the parties, so that it would work injustice to disregard the partition. No parol partition is rendered complete and binding by severalty of possession before the statute of limitations has run, unless facts have transpired that would render it unjust to disturb it. (See Cogswell v. Reed, 3 Fairf. 198.) There was no such proof in this case as would justify the court or jury in finding the fact of a parol partition binding on the parties.

III. The court properly excluded the deed of Roderman and wife, because to create an estoppel there must be mutuality. The admission that Baptiste Bompart had title to the town lot does not compel the defendants to admit his title to the land in the country.

IV. The foregoing points go mainly to the affirmance of the

26—VOL. XXIV.

judgment of non-suit. I wish to go further, and if possible procure such a decision as will settle the title to the land in controversy. It appears from the evidence in the cause—somewhat dimly it is true—that the land in controversy belonged to Henry Delorier, and that Mrs. Roderman and Marie Delorier are his only heirs. The question I desire to have decided is this, whether (the record partition being out of the case) the parol partition, if it can be sufficiently proved on another suit being brought to establish it, will estop the Delorier heirs from going behind it, and showing that Baptiste Bompart had no title to the land sought to be divided? In other words, whether a parol partition has the same effect to estop parties that a partition in a court of record is said to have? Lord Coke says, " if Rose (bastard eigné) and Ann (mulier puisné) make partition, Ann and her heirs are concluded forever." (1 Co. Litt. p. 709, 170, *b.*) But this doctrine does not hold, it would seem, in parol partitions, nor in equity. (See notes 68 and 69 to above reference ; see also Jackson v. Vosburg, 9 Johns. 270 ; Jackson v. Livingston, 7 Wend. 141.) It seems that a partition does not give title, but only severs the possession. (Jackson v. Christman, 4 Wend. 284 ; 9 Johns. 276 ; 1 Co. Litt. 170, *b.*) A partition between strangers is void. It would seem reasonable that, if two owners of land make partition of it and hold in severalty, they do not get title by the partition, but only several possessions ; and that, the title being proved and the possession being severed by parol agreement, they are estopped to deny the partition or severance of possession when such denial would work injustice ; but there can be no injury when one of the parties has no title whatever to any of the land. If A., owner of an entirety of land, and B., a stranger, enter and make a parol partition, is not the partition void? Can A. pass the title to the land in that way?

SCOTT, Judge, delivered the opinion of the court.

We are of the opinion that the court did not err in rejecting the supposed record of partition among those styling themselves

Bompart v. Roderman.

the heirs at law of Henry Delorier, deceased. That paper contained no record of a suit at law or equity. There is no plaintiff nor defendant. The proceeding is altogether a voluntary one. The consent of the parties could confer on the court no jurisdiction to proceed in the manner it did. It is as if those concerned had made a voluntary partition among themselves. Their subsequent ratification of the proceedings could impart no validity to them as a judicial act which they did not possess of themselves. The statute contemplates that in suits for partition there should be a plaintiff and a defendant. In all suits at common law, there must be an *actor* and a *reus*. If parties come in voluntarily and ask a court to make a partition among them, and it is done, they will stand afterwards just as they did before the court interfered, so far as a judicial sanction is concerned.

Those who are competent to contract may make such partition among themselves as they please, and it will be binding; but where partition is made by writ of *partitione facienda*, there it is otherwise; all the tenants, or those whose rights may be affected by it, should be parties. (Coke, 180 *a.*) Francis Bompart had an interest in the land. He was dead. It appears that he had heirs. Now they should have been parties. Even if their interest was by way of remainder or reversion, they should have been. (Burnhans v. Burnhans, 2 Barb. Ch. 398.) When we see by the record that there are parties who should have been joined, but who were not, whose portions have not been allotted to them, do we not see that the whole thing must necessarily be erroneous; that in giving those who are unprovided for in the partition their shares afterwards all the previous allotments must be set aside?

As to the points that the partition was binding as a voluntary one without the sanction of the court, and that it was made binding by the subsequent recommendation of the parties, we are of the opinion that such a mode of making a partition will be binding when the parties are all *sui juris* and bind themselves by a proper agreement. Had the agreement been relied

on, the original should have been produced, and the handwriting of the parties proved. A copy of the agreement found in the record was not evidence. It was not under seal. It could not therefore pass title. It would only amount to an agreement to convey. Whether the paper signed imported an agreement whose specific performance would be enforced by the decree of a court, we will not determine. Nor do we say whether the recommendation related to both the real and personal estate, or to the personalty alone. In the next place, the signatures show that it is not a binding agreement upon all interested. Celeste Roderman's husband was no party to the proceeding otherwise than by signing the paper expressing the satisfaction of the parties thereto with the report of the commissioners, and recommending its approval to the court. How would Mrs. Roderman's signature affect her rights? Could she convey away her interest in lands otherwise than by pursuing the mode prescribed by law for alienating her real estate? Charles Roderman having signed it, it would be binding on him as to his life estate or curtesy in his wife's land ; but we do not see how it could be made binding on her. The paper too is signed by Emilie Bompart, who was the wife of Louis Bompart. It is not signed by his heirs. Her signature would not bind the heirs, or in any way affect their rights.

The principle that a parol partition, followed up by possession, will be valid and sufficient to sever the possession, is only applicable to those cases where there is a title and it is admitted to be in common ; that is, where the parties are admitted to have a title, and are joint tenants or tenants in common with respect to it. In such a case there can be no question of title. The dispute can only be whether the limits of each one's possession have been settled. If they have been, there is a valid partition when possession has followed the adjustment. Very different is the case where the title of those setting up such a tenancy in common is denied. There the partition of itself can confer no title. It, together with adverse possession for twenty years, or with such acts and conduct on the part of those as-

Bompart v. Roderman.

serting the invalidity of partition as would create an estoppel *in pais* or otherwise, might give title or protect the possession. (Jackson v. Vosburgh, 9 Johns. 275.) Here the title of the party setting up the partition is wholly denied, and no bar is shown by lapse of time, nor any facts or circumstances which would create an estoppel. The deed from Roderman and wife can have no such effect. At most it is nothing more than an admission by them that there had been a partition. It is to a third person, and if it creates an estoppel, it is only between them and the person to whom the deed was executed and those claiming under it. Roderman's admission that a partition had been made, does not pass away his title, no more than an admission by one that he had conveyed away his land would be evidence of the fact. Lands must be conveyed in pursuance to the statute of frauds. In the case of Jackson v. Sherman, 6 Johns. 21, it is said, " these acknowledgments of the party as to title to real property are generally a dangerous species of evidence, and, though good to support a tenancy or to satisfy doubts in cases of possession, they ought not to be received as evidence of title ; *this would be to counteract beneficial purposes of the statute of frauds.*"

If, as was insinuated, there was an agreement between the heirs of Mrs. Delorier by Bompart, and those by Delorier, that the lands inherited from their respective parents should form a joint inheritance to be equally divided among them, we would suppose that if the heirs on the part of Delorier deny to the heirs of Bompart any portion of their inheritance, then they would be prepared to yield up any interest they may have received in the inheritance of the Bomparts. We do not see why they may not be compelled to this. But we will not go into this matter, as the record is silent in regard to it. Judge Ryland concurring, the judgment will be affirmed ; Judge Leonard absent.